

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 17, 2016**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| EMORY DILWORTH BELLARD, III, | § | Case No.: 15-20310-RLJ-7 |
| | § | |
| Debtor. | § | |
| | § | |
| RACHEL DIXON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 16-02001 |
| | § | |
| EMORY DILWORTH BELLARD, III, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

By this bankruptcy case, Emory Bellard seeks to discharge all debts that are properly dischargeable, including a contractual debt that he voluntarily entered into with his ex-wife, Rachel

Page 1

Dixon, just days before they filed for divorce in Florida. For their uncontested divorce, Bellard and Dixon opted for a simplified procedure created for pro se couples. In doing so, they made no mention of their agreement (and Bellard's obligation), and thus neither did the Florida court when it issued its judgment granting the divorce. Given such, Bellard here contends that the enforceability of his debt to Dixon was nullified. Dixon counters that the Florida court's judgment had no effect on the agreement—it is still existing and fully enforceable. They both agree, however, that *if the debt is enforceable*, it qualifies as a non-dischargeable domestic support obligation under the Bankruptcy Code.[1] Each party has moved for summary judgment.

The Court has jurisdiction of Bellard's bankruptcy under 28 U.S.C. § 1334 and the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B) and (I). Bankruptcy courts must be vigilant to avoid encroaching on the exclusive domain of Article III courts. *See Stern v. Marshall*, 564 U.S. 462, 502 (2011). But this is an action to determine the dischargeability of a debt under § 523 and is thus within the Court's constitutional authority. *Hart v. Southern Heritage Bank (In re Hart)*, 564 F. App'x 773, 776 (6th Cir. 2014) ("[W]e held post-*Stern* that the bankruptcy court had authority to enter final judgment on dischargeability claims . . . ."); *Digital Signs Wizards, Inc. v. Buerger (In re Buerger)*, No. 16-30403, 2016 WL 5400987, at *1 (Bankr. S.D. Tex. Sept. 26, 2016). Venue is proper under 28 U.S.C. § 1408(1).

## I.

### A.

The facts are undisputed. On February 19, 2013, Emory Bellard, III and Rachel Dixon (then Dixon-Bellard) went before a general magistrate of a Florida state court on their Petition for

---

[1] All Code and section references, unless otherwise identified, are to title 11 of the United States Code (the Bankruptcy Code).

Simplified Dissolution of Marriage. Upon the magistrate's report, the court, on February 27, 2013, issued a final judgment dissolving the Bellard marriage.[2] Months earlier, on October 15, 2012, by a contract between him and Rachel, Bellard had agreed to pay Dixon $3,000 per month beginning January 1, 2013, for 120 months or sooner if Dixon re-marries.[3]

At the time of the agreement, Bellard was making over $120,000 per year as an employee of Infosys Limited.[4] A few days after signing the agreement, however, Bellard resigned from Infosys to launch his own business.[5] In 2013 he remarried, taking on a handful of new dependents.[6] Up until February 2014, Bellard made the payments required by the agreement.[7] His new business apparently floundered; he stopped making the payments to Dixon, and he eventually filed this chapter 7 bankruptcy case on November 30, 2015.[8] In his schedules, Bellard lists a debt to Dixon, for an unknown amount, as a disputed, unsecured nonpriority claim.[9] Dixon submits that the remaining balance on the claim is $62,099.91.[10]

Dixon filed this action, objecting under § 523(a)(5) of the Code to the dischargeability of Bellard's obligation under the agreement.[11] Her complaint states that the agreement satisfies

---

[2] *Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(5)* (Complaint), Dkt. No. 1, Ex. B.

[3] Complaint, Ex. A. If Dixon moves in with a man she is in a relationship with, the sum is cut in half for that period.

[4] *Bellard's Brief in Opposition to Dixon's Consolidated Brief in Support of Dixon's Response to Bellard's Motion for Summary Judgment; and to Dixon's Cross-Motion for Summary Judgment* (Bellard's Reply), Dkt. No. 32, Ex. A.

[5] *Id.* at 19.

[6] *Id.* at 18.

[7] Complaint ¶ 10. Pursuant to an oral agreement, at some point the monthly payment was reduced from $3,000 to $2,750. *Id.* ¶ 8.

[8] Bellard's Reply at 19.

[9] Case No. 15-20310, Dkt. No. 28 at 11.

[10] Complaint ¶ 10.

[11] *Id*. at 4.

§ 101(14A)'s definition of a "domestic support obligation" and is thus non-dischargeable under § 523(a)(5). Bellard, while admitting the existence of the agreement, contends it is a legal nullity because alimony or support was not pleaded or otherwise even mentioned in the parties' Florida divorce proceeding.[12]

### B.

Each side has filed for summary judgment, with multiple responses and replies; hearing was held on September 8, 2016. Bellard argues that in order for the agreement (and his obligation thereunder) to be non-dischargeable, it must first be a valid, enforceable contract under Florida law.[13] And since Dixon did not plead alimony in state court, she waived any right to alimony and any claim is now barred by res judicata, Bellard contends.[14] He does not dispute that the agreement, if enforceable, would constitute a domestic support agreement under § 101(14A) and thus be non-dischargeable under § 523(a)(5)—his argument is that once Dixon invoked the jurisdiction of the Florida family law court and failed to raise the issue of alimony, such act turned a valid contract into a legal nullity, "dead on arrival."[15] So, while the agreement was valid and enforceable at the time of its inception, it was rendered unenforceable by the parties' failure to raise it in their fast-track, simplified divorce proceeding.

Dixon responds that the agreement is a domestic support obligation on its face and that that alone is enough for the Court to find the debt non-dischargeable.[16] If the Court must determine the

---

[12] *Answer to Complaint Objection to Dischargeability of Debt Pursuant to 11 U.S.C. Section 523(a)(5)* (Bellard's Answer), Dkt. No. 7 ¶ 6.

[13] *Defendant's Motion for Summary Judgment*, Dkt. No. 11.

[14] *Id*.

[15] Hearing held Sept. 8, 2016.

[16] *Consolidated Brief in Support of Dixon's Response to Bellard's Motion for Summary Judgment & Dixon's Cross-Motion for Summary Judgment*, Dkt. No. 18 at 6–7.

enforceability of the agreement under Florida law, Dixon maintains that the agreement *is* enforceable as a private support agreement: Dixon's failure to plead for alimony in the divorce proceeding bars judicially-awarded alimony, not private agreements.[17] Dixon submits that the more appropriate course for this Court is to rule on the dischargeability question and to leave any determination of the agreement's enforceability to the Florida courts.[18]

## II.

### A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When opposing parties file cross-motions for summary judgment, courts review "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Burnett Ranches, Ltd. v. United States*, 753 F.3d 143, 146 (5th Cir. 2014) (internal quotation and citation omitted).

### B.

A debtor in chapter 7 is granted a discharge of all debts other than those specifically listed as non-dischargeable under § 523 of the Code. § 727(b). "This is the 'fresh start' central to the purpose of the American bankruptcy system." *Steele v. Wyly (In re Wyly)*, 525 B.R. 644, 653 (Bankr. N.D. Tex. 2015) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). One such debt that Congress excepted from discharge is a "domestic support obligation." § 523(a)(5). The term is defined in § 101(14A) to include a debt that is "owed to or recoverable by" a former spouse; is "in the nature of alimony, maintenance, or support"—regardless how designated; and arises by a

---

[17] *Id.* at 12–15.

[18] *Id.* at 18–20.

"separation agreement." 11 U.S.C. § 101(14A). The statutory definition is construed broadly "to ensure that the Bankruptcy Code does not become a tool to allow debtors to escape familial obligations." *In re Wyly*, 525 B.R. at 653 (citing *Milligan v. Evert (In re Evert)*, 342 F.3d 358, 367 (5th Cir. 2003)). The burden of proof is on the creditor. *Id.* (citing *Grogan*, 498 U.S. at 283).

Dischargeability is "a matter of federal bankruptcy law, not state law." *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 277–78 (5th Cir. 1994) (citing *Grogan*, 498 U.S. at 284). A bankruptcy court is "required to make findings of fact and conclusions of law in accord with federal bankruptcy law" in a dischargeability proceeding and has "neither the option nor the authority to apply state law." *Id.* at 279. The applicable state law's role is merely to shed light on the intention of the parties at the time of the agreement. *Crist v. Crist (In re Crist)*, 632 F.2d 1226, 1229 (5th Cir. 1980). An agreement can qualify as alimony or support for dischargeability purposes even if the state laws provide "no such animal as alimony." *Dennis*, 25 F.3d at 278. This can be true even in the face of res judicata because the bankruptcy court has an independent duty to follow the mandate from Congress "to provide plenary review of dischargeability issues." *Id.* at 278; *Browning v. Navarro*, 887 F.2d 553, 561 (5th Cir.1989) ("[B]ankruptcy courts have a job to do and sometimes they must ignore res judicata in order to carry out Congress' mandate."). Collateral estoppel[19] may restrict the bankruptcy court's discretion, but "only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *Dennis*, 25 F.3d at 278 (citations omitted).

---

[19] The Court defines res judicata and collateral estoppel separately. Res judicata is "the effect of foreclosing any litigation of matters that never have been litigated, because of the determination they should have been advanced in an earlier suit." Charles Alan Wright, *The Law of Federal Courts* § 100A, at 722–23 (5th ed. 1994) (as reprinted in BLACK'S LAW DICTIONARY 1337 (8th ed. 2004)). Collateral estoppel is the "preclusion of matters that have once been decided." *Id*.

### C.

The agreement satisfies the Code's definition of a domestic support obligation. It was entered into in connection with the parties' uncontested divorce. It imposes an obligation on Bellard to make support payments *to Dixon*. Bellard, however, wants the Court to go beyond the agreement itself and decide that an otherwise valid domestic support obligation was somehow nullified because it was not mentioned in the Florida divorce proceeding. The Court will not do this and, in fact, questions its authority to do so. The Bankruptcy Code provides that a domestic support obligation is non-dischargeable, period. Unlike certain other non-dischargeable debts—those arising from certain intentional torts—in which the aggrieved creditor must affirmatively object to the dischargeability of the debt, such requirement is not imposed on the creditor-spouse to whom the debtor is obligated to pay alimony, support, or maintenance. Neither res judicata nor collateral estoppel are applicable here. The nature of the agreement and whether it is dischargeable in bankruptcy were not before the Florida court. This is a bankruptcy-specific issue. It serves no purpose for *this* Court to wade into the laws of Florida governing divorces and divorce proceedings. This dispute does not affect the estate or other creditors; this is a "no-asset" case—there are no assets that the trustee can administer for the benefit of creditors. Even assuming the Court can decide whether the debt here is still enforceable, the Court defers to the appropriate Florida state court. Bellard's motion for summary judgment will be denied; Dixon's motion for summary judgment will be granted.

### End of Memorandum Opinion ###